**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie D. Friess,<br><br>    Plaintiff,<br><br>v.<br><br>Shellpoint Mortgage Servicing,<br><br>    Defendant. | No. CV-21-08101-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Shellpoint Mortgage Servicing's ("Defendant") Motion to Dismiss (Doc. 17). For the reasons below, Defendant's Motion is granted.

**BACKGROUND**

For the purposes of the Motion, the Court construes all facts in the Complaint as true. Defendant is the current servicer of Plaintiff's mortgage. (Doc. 1 at 2.) On January 13, 2021, Plaintiff sent a letter to Defendant asking for "the entirety of her loan file." (Doc. 1 at 3–4, 8.) Defendant did not provide the records requested. (Doc. 1 at 3.) Instead, Defendants responded on March 1, 2021 with a copy of the loan history statement. (Doc. 1 at 3.) Plaintiff now sues, alleging that Defendant's response violated the Real Estate Settlement Procedures Act ("RESPA"). (Doc. 1 at 5–6.)

**DISCUSSION**

"[RESPA] provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers." *Medrano v. Flagstar Bank, FSB*,

704 F.3d 661, 663 (9th Cir. 2012). Pursuant to RESPA, when a borrower sends a "Qualified Written Request" ("QWR"), the servicer must (1) acknowledge receipt of the request "within five days" and, (2) depending on the request, either (i) provide the borrower with the requested information, or conduct a reasonable investigation and provide written notice that the requested information is not available, or (ii) correct the errors the borrower has indicated, or conduct a reasonable investigation and provide the borrower with written notice that no error has occurred. 12 C.F.R. § 1024.35, 1024.36. If the servicer fails to respond properly to the QWR, the statute entitles the borrower to recover "actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).

Plaintiff alleges two theories for relief under RESPA. First, Plaintiff alleges that Defendant failed to acknowledge receipt of her QWR within five days. (Doc. 1.) Second, Plaintiff alleges that Defendant failed to adequately respond to the QWR as required by RESPA. (Doc. 1.) Defendants argue that Plaintiff's Complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I. Legal Standard**

    **A. Motion to Dismiss**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

    **B. Evidence Outside the Pleadings**

"[E]vidence outside the pleadings . . . cannot normally be considered in deciding a

12(b)(6) motion." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice— without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see* Fed. R. Civ. P. 12(d). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

Plaintiff has attached several documents to her Complaint that the Court will consider. These are (1) the January 13 correspondence at issue, (Doc. 1 at 8–12); (2) a certified mail receipt documenting Defendant's receipt of the January 13 correspondence, (Doc. 1 at 14–16); (3) Defendant's March 1 response to Plaintiff's correspondence, (Doc. 1 at 18–41); (4) Plaintiff's response to Defendant's March 1 letter, (Doc. 1 at 43–45); and (5) another letter from Defendant dated March 17, 2021, (Doc. 1 at 47–48). Defendant also provides a letter, dated January 29, 2021, allegedly sent to Plaintiff acknowledging her request. (Doc. 17-1.)

**II. Defendant's Failure to Acknowledge**

Defendant first argues that Plaintiff's written correspondence does not constitute a "QWR" under RESPA, and its duty to acknowledge her response was therefore never triggered. (Doc. 17 at 6.) Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). A QWR "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). The second requirement is divided into "Notices of Error" and "Requests for Information," as described in two implementing regulations. 12 C.F.R. § 1024.35(a), 1024.36(a); *Rakestraw v. Nationstar Mortg., LLC*, NO. 1:18-cv-03144-ELR-

LTW, 2019 WL 3521954, at *3 (N.D. Ga. May 29, 2019); *see also Cruz v. Freedom Mortg. Corp*, No. CV 18-1438 PSG (KSx), 2018 WL 6118532, at *4 (C.D. Cal. May 3, 2018). 12 C.F.R. § 1024.35 explains the procedures for "Notices of Error," which pertain to QWRs that allege errors in the servicing of the loan. 12 C.F.R. § 1024.36 provides the procedures for QWRs that request information ("RFIs") related to the servicing of the loan. Plaintiff has pleaded the latter in her Complaint, (Doc. 1).[1]

Plaintiff's requests for information must relate to the "servicing" of the loan to qualify as a QWR. 12 U.S.C. § 2605(e)(1)(A); *McCoy v. Wells Fargo Bank, N.A.*, No. 1:20-cv-00176-CL, 2021 WL 4451423, at *4 (D. Or. July 21, 2021). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). "Servicing," therefore, "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano*, 704 F.3d at 666–67. "Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Id.*

Courts reject RFIs that broadly request information that do not relate to the servicing of the loan.[2] *See, e.g.*, *McCoy*, 2021 WL 4451423, at *6 ("Where the majority of requests in a purported Inquiry are not related to the servicing of a loan, the Court should not treat it as a request under the statute."); *Anderson v. Wells Fargo Home Mortg.*, No. 2:16–CV–01783 LEK, 2017 WL 4181114, at *5 (E.D. Cal. Sept. 21, 2017) (holding that request for "complete life of loan transactional history" was overbroad); *Crowley v. Ameriprise Fin.,*

---

[1] Although the parties use the term "QWR" instead of "RFI," the Court will use the term "RFI" because it more specifically denotes what Plaintiff has pleaded. (Doc. 1 at 5–6.)

[2] There is some confusion surrounding the proper terminology to be used for QWRs that post-date the 2014 regulations. *McCoy*, 2021 WL 4451423, at *5 n.1. Some of the Court's cited cases use the term "QWR" quite liberally, but because these cases involved requests for information—as in, the plaintiff requested that the defendant provide her with documents—the Court relies on them as persuasive authority in this case. *See* 12 C.F.R. § 1024.36(a).

*Inc.*, No. CV 14-02194 BRO (AGR), 2014 WL 12586069, at *3 (C.D. Cal. Sept. 3, 2014) ("RESPA does not protect 'laundry list' demands for information. . . ."); *Bhatti v. Guild Mortg. Co.*, No. C11–0480JLR, 2011 WL 6300229, at *7–8 (W.D. Wash. Dec. 16, 2011) ("Because Plaintiffs['] letters effectively demand anything and everything that relates to their loan, from its inception . . . their letters do not assist [the defendant] in identifying and investigating any purported discrepancies with the servicing of their loan."). Still, other courts have held that mixed requests—containing both requests for servicing and non-servicing information—can be a QWR. *See, e.g.*, *Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013) ("Courts have held that a letter that mixes servicing requests and non-servicing requests can constitute a valid QWR."); *Rey v. OneWest Bank, FSB*, No. 2:12–cv–02078–MCE–GGH, 2013 WL 1791910, at *3 (E.D. Cal. Apr. 26, 2013) (collecting cases); *Diunugala v. JP Morgan Chase Bank, N.A.*, 81 F. Supp. 3d 969, 982 (S.D. Cal. 2015).

In Plaintiff's January 13 correspondence, she requested her "complete loan file." (Doc. 1 at 8.) She defined "complete loan file" as "includ[ing], but . . . not limited to": (1) "[a] full detailed accounting" of her payments and how they had been applied; (2) "[a]ll loan documents," including "forbearance applications, agreements[,] and repayment plans"; (3) "[a]ll written communications . . . regarding the underlying loan and [Defendant's] servicing"; (4) "[a]ny recordings or transcripts of telephonic communications between [Defendant] and any party regarding the underlying loan and [Defendants'] servicing"; and (5) "[a]ny and all reports from investigations" ordered by Defendant in the course of servicing the loan, including records from those investigations. (Doc. 1 at 11.)

Plaintiff's request for her entire loan file, even when considered in conjunction with her specific requests, is insufficient to trigger Defendant's duty to acknowledge under RESPA. Plaintiff's specific requests are too broad and only tangentially related to "servicing" as defined by RESPA.[3] Unlike the *Pendleton* line of cases—all of which

---

[3] Defendant complied with Plaintiff's First Request by providing a full accounting of her loan as of December 2020. (Doc. 1 at 27–41.) This accounting was again provided to

- 5 -

contained specific requests for documents, only some of which were outside the scope of RESPA—Plaintiff's purported RFI is all encompassing. *See* Compl. Exh. A, *Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013) (No. 13–6283), ECF No. 1; Compl. Exh. R, *Rey v. OneWest Bank, FSB*, No. 2:12–cv–02078 (E.D. Cal. Apr. 26, 2013), ECF No. 1-4. Aside from asking for her entire file, which is clearly outside the scope of RESPA, Plaintiff asks for "all" or "any" loan documents, written communications, reports, recordings, or transcripts related to Defendant's servicing of the loan. (Doc. 1 at 11.) These broad requests do not "provide[] sufficient detail to the [Defendant] regarding . . . information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Instead, the requests are "more akin to a discovery demand than a qualified written request." *Moon v. Countrywide Home Loans, Inc.*, No. 3:09–CV–00298–ECR–VPC, 2010 WL 522753, at *5 (D. Nev. Feb. 9, 2010); *Rizk v. Residential Credit Sols., Inc.*, No. CV-14-09371-MWF-JC, 2016 WL 6211727, at *2 (C.D. Cal. Apr. 12, 2016) (holding that purported QWR requesting "'all documentation pertaining to the servicing of [the] mortgage' and all documents comprising [the] 'loan history,' covering 'the entire life of the loan'" was too broad); *Croskrey v. Ocwen Loan Servicing LLC*, No. SA CV 14-1318-DOC (DFMx), 2016 WL 3135643, at *11 (C.D. Cal. June 2, 2016) ("'Given the breadth of plaintiffs' putative QWR,' it does appear that some of the requests of information may have touched on servicing practices; 'but in the court's opinion, it cannot fairly be said that the letter sought information relating to the servicing of plaintiffs' loan." (quoting *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 787 (S.D. Miss. 2014))); *Hollenshead v. Bank of Am., N.A.*, No. 4:18-CV-00724-ALM-CAN, 2020 WL 4615096, at *7 (E.D. Tex. May 19, 2020)

---

Plaintiff in response to her January 13 correspondence. (Doc. 1 at 18, 27–41.) Plaintiff's Second Request for "all loan documents," (Doc. 1 at 11), is outside the scope of RESPA. *Aazami v. Wells Fargo Bank, N.A.*, No. 3:17-CV-01564-BR, 2019 WL 281286, at *11 (D. Or. Jan. 22, 2019) ("[A] borrower's requests relating to loan modification are not related to 'servicing' of the loan."); *Medrano*, 704 F.3d at 666–67. Plaintiff's Third through Fifth Requests are broadly worded to include "[a]ll written communications," "[a]ny recordings or transcripts," and "[a]ny and all reports" that relate to "the underlying loan and [Defendant's] servicing." (Doc. 1 at 11.) These requests cannot be saved merely by using the word "servicing" because they are still too broad to "provide[] sufficient detail to the servicer regarding [the] information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii); *see also Ovsepyan v. OneWest Bank, FSB*, No. CV 11–8714–GHK (RZx), 2012 WL 10423213, at *3 (C.D. Cal. June 14, 2012) (collecting cases).

(collecting cases). Plaintiff's written correspondence is not an RFI as contemplated by § 1024.36.[4]

**III. Adequacy of Response**

For the reasons explained above, *supra* Part II, Plaintiff's written correspondence does not meet the definition of an RFI, and Defendants were under no obligation to respond. Even if the Court construed it as such, however, Defendant properly complied with its obligations under RESPA. RESPA does not require a servicer "to provide the requested information or conduct an investigation if it determines that the request for information is duplicative of information the servicer has already provided the borrower, is irrelevant because it is not 'directly related' to the borrower's mortgage loan account, or the request is overbroad or unduly burdensome." *Lebeau v. U.S. Bank, N.A.*, No. 17-329-JJM-PAS, 2019 WL 1077285, at *4 (D.R.I. Mar. 7, 2017); 12 C.F.R. § 1024.36(f)(1)(i), (f)(1)(iii), (f)(1)(iv). To invoke one of those exceptions, the servicer must provide notice to the borrower within five days of making the determination that the exception applies. 12 C.F.R. § 1024.36(f)(2).

Defendant made such a determination and sent the required notice in its March 1 letter to Plaintiff. (Doc. 1 at 18.) Although Plaintiff pleaded that she did not receive "written notice that [Defendant] was not required to comply [with RESPA]," (Doc. 1 at 6), this allegation is directly contradicted by the March 1 letter, which was attached to the

---

[4] Even if the Court treated Plaintiff's correspondence as an RFI, Plaintiff has failed to properly plead damages. RESPA provides that anyone who violates RESPA shall be liable for actual damages to an individual who brings an action. *See* 12 U.S.C. § 2605(f)(1). "[T]he loss alleged must be related to the RESPA violation itself." *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). Here, Plaintiff alleges that she has suffered actual damages because of Defendant's failure to acknowledge her January 13 correspondence, including mailing expenses and attorney's fees, emotional distress, late fees and interest charges, and the inability to refinance or sell her property. (Doc. 1 at 6, 45.) But Plaintiff does not plead facts that connect any of these damages to Defendant's failure to acknowledge her January 13 correspondence. Though these damages may be related to either Defendant's allegedly deficient March 1 response, Defendant's allegedly deficient servicing of the loan, or Plaintiff's own conduct, Plaintiff does not plead facts plausibly linking these damages to Defendant's failure to respond within five days. Therefore, even if the Court were to consider Plaintiff's written correspondence as a proper RFI, the failure-to-acknowledge theory would still be dismissed.

Complaint, (Doc. 1 at 18.)[5] In the letter, Defendant noted that it "[had] already responded to a previous dispute substantially the same as [the] current dispute," provided Defendant's prior response, informed Plaintiff that the matter was referred to a foreclosure attorney, and provided the contact information for the attorney. (Doc. 1 at 18.) Plaintiff does not allege that Defendant's representation was false, nor does Plaintiff challenge that the letter did not meet the five-day deadline, which is measured from when the determination was *made*, as opposed to when the RFI was *received*. 12 C.F.R. § 1024.36(f). Plaintiff must affirmatively plead a RESPA violation, which she has not done here. *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1348 (S.D. Fla. 2016) ("[I]in order to survive a motion to dismiss, a complaint like Plaintiff's must sufficiently allege that . . . Defendant failed to respond adequately."); *Hollenshead*, 2020 WL 4615096, at *6 (collecting cases).

**IV. Leave to Amend**

Plaintiff has asked for leave to amend should the Court grant Defendant's Motion. (Doc. 18 at 13.) Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when "justice so requires." Fed. R. Civ. P. 15(a). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Leave to amend lies within "the sound discretion of the trial court"; however, this Circuit has instructed that Rule 15's policy favoring amendment "should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The party opposing amendment bears the burden of establishing futility or one of the other permissible reasons for denying a motion to amend. *Angel Jet Servs., L.L.C. v. Raytheon Health Benefits Plan*, No. 2:10-CV-01385-PHX-JAT, 2011 WL 744917, at *2 (D. Ariz. Feb. 25, 2011).

Defendant does not claim that Plaintiff's amendment would be prejudicial, in bad

---

[5] "[Courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

faith, or dilatory. Instead, Defendant relies on Local Rule 15.1 and futility. (Doc. 20 at 6-7.) Although Plaintiff did not comply with the local rule by lodging an amended complaint or attaching it to her response, the Court will consider the request on the merits. Plaintiff has attempted to plead a cause of action under both 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36, and the alleged violation relates to Defendant's failure to provide records. (Doc. 1 at 5–6.) However, it is possible that Plaintiff could provide facts to properly plead a claim. The Court declines to comment on whether such a claim would be meritorious; however, given the liberality with which district courts must construe motions to amend, amendment is not frivolous.

## CONCLUSION

Because Plaintiff's written correspondence exceeds the scope of RESPA, it does not qualify as an RFI pursuant to 12 U.S.C. § 2605(e)(1)(B) and 12 C.F.R. § 1024.36. Therefore, Plaintiff has failed to state a claim, and Defendant's Motion is granted. However, at this time the Court cannot determine that amendment is futile. Accordingly,

**IT IS HEREBY ORDERED** granting Defendant's Motion to Dismiss (Doc. 17).

**IT IS FURTHER ORDERED** that Plaintiff has 30 days from the date of this order to file an Amended Complaint.

**IT IS FURTHER ORDERED** that if Plaintiff fails to file an Amended Complaint within 30 days from the date of this order, the Clerk of Court must, without further notice, enter judgment of dismissal of this action with prejudice on or after **April 11, 2022**.

Dated this 10th day of March, 2022.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge